UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

BETTY JEAN MURPHY,                          :

                Plaintiff,        :    CIVIL NO. 3:02CV2311(JBA)

    v.                                     :

HEATH                                       :

                Defendant.        :    OCTOBER 6, 2004

### MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
### FOR SUMMARY JUDGMENT

The defendant, David Heath, Food Service Worker, moves pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure for summary judgment on the plaintiff's Eighth Amendment claim. The defendant, United States of America, also moves for summary judgment on the plaintiff's Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. ("FTCA") claim.[1]

For all of the reasons that follow, the motion for summary judgment should be granted.

## I.  Background

The defendant has submitted a Local Rule 56(a)1 Statement, and supporting exhibits, which is wholly incorporated by reference herein.____

____The plaintiff, Betty Jean Murphy, is a federal inmate

---

[1]In the Court's March 30,2004 ruling on the defendant Heath's motion to dismiss, the United States was substituted as the defendant for the plaintiff's FTCA claim.

incarcerated at the Federal Prison Camp ("FPC") in Alderson, West Virginia since July 3, 2002.  Prior to arriving at FPC Alderson, the plaintiff was based at Federal Correctional Institution ("FCI") Danbury, Connecticut from January 29, 2000 to July 3, 2002.  See Exhibit A, Affidavit of George Vogliano, M.D.  The defendant, David Heath, began his employment with the Bureau of Prisons in 1989 as a Cook Supervisor at FCI Danbury, Connecticut.  He currently is a Food Services Warehouse Supervisor at FCI Danbury.  See Exhibit B, Affidavit of David Heath at ¶ 1.

On March 7, 2002 at approximately 7:30 A.M., the plaintiff reported for work to the Food Services Department wearing one slipper and one sneaker.  See Exhibit B, ¶ 3.  Because Slippers are not permitted to be worn by inmates assigned to the Food Services Department, the defendant, who was on shift as Cook Supervisor, informed the plaintiff that she needed to go back to her room and get her steel toed shoes on because they are generally required in Food Services.  See Exhibit B, ¶ 4.

The plaintiff responded that she had a soft shoe pass and that she had several other restrictions that prevented her from working in the Food Services Department.  See Exhibit B, ¶ 5.  The defendant explained to the plaintiff that slippers are not allowed in the Food Services Department and that she needed to wear some sort of shoe or sneaker on that foot.  See Exhibit B, ¶ 7.  The defendant further informed her that if she had documentation

indicating that she was unable to work in Food Services, she needed to bring that paperwork to his attention.  See Exhibit B, ¶ 8.

The plaintiff returned to Food Services thirty minutes later still wearing one slipper and one shoe.  She also had three folders with her, which were approximately four or five inches thick.  See Exhibit B, ¶ 9.  The plaintiff stated that she had to look through those folders to find her medical restrictions and soft shoe pass. See Exhibit B, ¶ 10.  The defendant informed the plaintiff that it was her responsibility to have available any medical paperwork when she reported to work, and that she was not going to use work time to look up any paperwork.  See Exhibit B, ¶ 11.  The defendant told her to return her folders to her room and return to Food Services wearing either two shoes or two sneakers on her feet.  See Exhibit B, ¶ 12.

When the plaintiff left to go to her room, the defendant called the institution hospital (Health Services Unit or "HSU") to get any medical history on Plaintiff which would prevent her from working in Food Services.  See Exhibit B, ¶ 13.  Staff at the HSU reported that there was absolutely no reason why the plaintiff could not work in the Food Services Department.  See Exhibit B, ¶ 14.  Her medical history only indicated that she had a restriction from wearing steel toe shoes.  See Exhibit B, ¶ 15.  The Laundry Department further stated that the plaintiff had refused the soft shoes which had been provided to her.  See Exhibit B, ¶ 15.

- 3-

When the plaintiff returned to Food Services, the defendant told her that he had learned her medical status, and that she needed to get a sneaker or soft shoe for her slipper clad right foot because there was no restriction limiting her from working at Food Services. <u>See</u> Exhibit B, ¶ 16. The plaintiff again left and this time came back with a sneaker and stated that she could not put it on her foot. <u>See</u> Exhibit B, ¶ 17. The defendant noticed that she had not even untied the shoe. <u>See</u> Exhibit B, ¶ 18. The defendant watched the plaintiff untie the shoe and told her to pull the tongue out of the shoe, loosen the laces, and slide her foot in. <u>See</u> Exhibit B, ¶ 19. The plaintiff continued to complain that she could not put the shoe on. <u>See</u> Exhibit B, ¶ 20.

The defendant knelt down and noticed that the plaintiff was rolling her toes under so that her foot would not fit in her sneaker. <u>See</u> Exhibit B, ¶ 21. The defendant told her to straighten out her toes and slide her foot into the sneaker. <u>See</u> Exhibit B, ¶ 22. The plaintiff's foot slid right in the shoe but she complained that she could not tie her sneaker because her foot hurt. <u>See</u> Exhibit B, ¶ 23. The defendant told her that she could leave her laces untied because her job was to sit by the serving line and hand out napkins. <u>See</u> Exhibit B, ¶ 24.

The defendant never touched the plaintiff's sneaker, foot or any other part of her body. <u>See</u> Exhibit B, ¶ 25. Nor did the defendant threaten to write the plaintiff up with an incident

report because of her foot condition.  <u>See</u> Exhibit B, ¶ 28.  At no time while she was working did the plaintiff ask the defendant to go to the HSU because of any problems she was having with her foot. <u>See</u> Exhibit B, ¶ 27.

Four days later, on March 11, 2002, Plaintiff went to sick call, complaining of pain in her right foot due to a bunion.  <u>See</u> Exhibit A, ¶ 2.c.  The health services examination did not reveal any signs of infection and only noted redness to her foot. Plaintiff was provided oral medication for discomfort, was given convalescence for thirty days, and was authorized to wear slippers. <u>See</u> Exhibit A, ¶ 2.c.  No other injuries were reported by the plaintiff.  The plaintiff reported to Health Services as follow-up about two times after March 7, 2002, however no serious injuries were ever reported, nor was the determination ever made that her discomfort was caused by the incidents of March 7, 2002.  <u>See</u> Exhibit A, ¶ 2.c.  Finally, the plaintiff has not complained of any psychological trauma from the alleged incident.  <u>See</u> Exhibit A.

## II.  <u>Standard of Review</u>

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a mater of law." Rule 56(c), Fed. R. Civ. P.  The burden of establishing that there is no genuine factual

dispute rests with the moving party.  Gallo v. Prudential Residential Services Ltd. P'ship, 22 F. 3d 1219, 1223 (2d Cir. 1994).  In ruling on a motion for summary judgment , the Court must resolve all ambiguities and draw all reasonable inferences in favor of plaintiff, as the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Therefore, 'only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

### III.  Argument

The defendant is entitled to judgment as a matter of law because there is no evidence to support the plaintiff's Eighth Amendment deliberate indifference claim contained in her Complaint. Specifically, there is no evidence that the plaintiff suffered from a sufficiently serious medical condition.  Nor is there any evidence that, assuming she suffered from a serious medical condition, that the defendant disregarded that condition thereby subjecting her to a substantial risk of harm.  In addition, the defendant is entitled to qualified immunity on the plaintiff's claim.  Finally, the United States is entitled to summary judgment on the plaintiff's tort claim because there is no evidence to support that claim.

### I.  The Defendant Is Entitled to Summary Judgment On The Plaintiff's Bivens Claim.

The plaintiff claims she was inappropriately touched by the

- 6-

defendant at the Food Services Department on March 7, 2002 at FCI
Danbury.  Specifically, she contends that the defendant forced her
foot into a sneaker, causing personal injury, humiliation, duress,
pain and suffering.  The plaintiff brings this Eighth-Amendment
claim for relief under the theory of liability set out in <u>Bivens v.
Six Unknown Federal Agents</u>, 403 U.S. 388 (1971).[2]  In <u>Bivens</u>, the
Court held that federal officials may be held liable in their
individual capacities for violations of the Constitution when
acting under color of federal law.  <u>Id.</u>  For the reasons that
follow, however, the defendant is entitled to summary judgment on
the plaintiff's <u>Bivens</u> claim.

The Eighth Amendment protects inmates from conditions of
confinement that impose an excessive risk to their health or
safety.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994); <u>Hathaway
v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994)("Hathaway II"); <u>Gomez v.
Warden of the Otisville Correctional Facility</u>, No. 99 Civ. 9954
(AGS), 2000 WL 1489478, at *5 (S.D.N.Y. Sept. 29 2000).  To prevail
under the Eighth Amendment for a claim of deliberate indifference
to a serious medical need, a plaintiff must show 1) that there was
a condition posing a substantial risk of serious harm, and 2) that
the defendant displayed deliberate indifference to the plaintiff's

---

[2]In its ruling on the defendant's motion to dismiss, the Court
concluded that the plaintiff is asserting an Eighth Amendment claim
of unconstitutional conditions of confinement as a result of the
defendant Heath's alleged deliberate indifference to her serious
medical needs.  (<u>See</u> Ruling on Motion to Dismiss at p. 7.)

health or safety in disregarding it.  <u>Farmer</u>, 511 U.S. at 834.

This deliberate-indifference standard includes objective and

subjective prongs.  <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553

(1996)("Hathaway III").

     A.  <u>Serious Medical Need</u>

      There is no evidence that the plaintiff's medical condition is

objectively serious and thus her Eighth Amendment claim fails as a

matter of law.

      To be sufficiently serious, the alleged denial of appropriate

medical care or intentional interference with medical treatment

must involve a "condition of urgency, one that may produce death,

degeneration or extreme pain."  <u>Id.</u> (internal quotations omitted;

citations omitted).  In addition, the Second Circuit has identified

several factors that are relevant to the inquiry into the

seriousness of a medical condition: "'[t]he existence of an injury

that a reasonable doctor or patient would find important and worthy

of comment or treatment; the presence of a medical condition that

significantly affects an individuals daily activities; or the

existence of chronic and substantial pain.'" <u>Chance v. Armstrong</u>,

143 F.3d 698, 702 (2d Cir. 1998).

      The plaintiff does not claim that she received inadequate

medical care or treatment for her foot condition.  (<u>See</u> Defendant's

Local Rule 56(a)1 Statement "Def.'s Stat." ¶ 37).  Nor does she

claim that the defendant interfered with her medical care or

- 8-

treatment of her foot condition.  Id. at ¶ 38.  Indeed, the record is devoid of any evidence to support such a claim.[3]  Although the plaintiff appears to contend that the defendant disregarded her foot condition thereby subjecting her to an excessive health risk, there is no evidence that the plaintiff suffered from a sufficiently serious medical condition.  Id. at ¶¶ 31-34, 39-41.  Instead, the evidence establishes that the plaintiff suffered from a minor foot ailment that did significantly affect her daily activities.  Id. at ¶¶ 39-41.  Moreover, there is no evidence from which a reasonable trier of fact could conclude that the plaintiff suffered from objectively chronic and substantial pain.

Rather, the undisputed evidence shows that the health services examination of the plaintiff on March 11, 2002 did not reveal any signs of infection and only noted redness to her foot.  Id. at ¶ 32.  No serious injuries were ever reported by the plaintiff. Notably, in the months after the alleged incident, the plaintiff only reported for follow-up medical services on two occasions but at no point did she report any serious injuries or even that she was suffering from discomfort due to the alleged incident.  Id. at ¶ 33.

---

[3]Even if the Court construed the plaintiff's claim as alleging a temporary delay or interruption in treatment, (which the defendant maintains there was not), there is no evidence in the record showing that such a delay or interruption was sufficiently severe so as to rise to the level of an Eighth Amendment violation.  See Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003).  At best, any such alleged lapse in treatment was minor and inconsequential.

In sum, the evidence shows that the plaintiff suffered from a minor foot condition– a bunyion - which is not a condition of urgency or one that will cause degeneration or death. Consequently, because there is no evidence from which a reasonable finder of fact could conclude that the plaintiff suffered from a serious medical condition, the defendant is entitled to summary judgment.

B.    Deliberate Indifference

Assuming the plaintiff had a serious medical condition (which the defendant maintains she did not), there is no evidence that the defendant knew of and disregarded her medical condition subjecting her to a substantial risk of harm.  Consequently, the defendant is entitled to summary judgment on the plaintiff's Eighth Amendment claim.

The subjective prong requires that defendants accused of violating the Eighth Amendment act with a "sufficiently culpable state of mind."  Id. (citations omitted).  Thus, mere negligence does not give rise to a constitutional claim.  See Hathaway III, 99 F.3d at 553.  A prison official acts with the requisite deliberate indifference when "he knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  Simply put, to succeed in showing deliberate

indifference, a plaintiff "must show that the acts of defendants involved more than lack of due care, but rather involved obduracy and wantonness in placing his health in danger." LaBounty v. Coughlin, 137 F.3d 68, 72-73 (1998)(citing Whitley v. Albers, 475 U.S. 312, 319 (1986). Deliberate indifference may also be in the form of intentional interference with the prescribed treatment of an inmate. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). Thus, "[p]rison officials who actually knew of a substantial risk to an inmate's health may be found free from liability if they respond reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844.

There is no evidence that the defendant knew of and disregarded a substantial risk of harm to the plaintiff. Rather, the evidence shows that the defendant responded reasonably to the plaintiff's actions. That is, because the plaintiff showed up to work at the Food Services Department wearing improper shoes, it was appropriate for the defendant to require her to wear closed toe shoes. Def.'s Stat. ¶ 6. Moreover, the defendant was advised by medical officials that the plaintiff did not have any restrictions which would have prevented her from working in the Food Services Department. Id. at ¶¶ 15-17.

In addition, there is no evidence that the defendant ever touched the plaintiff's sneaker, foot, or any other part of her body. Id. at ¶ 28. There is also no evidence that the defendant

threatened to write plaintiff up with an incident report because of her foot condition or that the plaintiff even asked the defendant to go to the Health Services Unit because she was in pain.  Id. at ¶¶ 29-30.  Nor is there any evidence that the plaintiff received inadequate medical care or treatment for her foot condition.  Id. at ¶¶ 37-38.  Finally, there is no evidence that she was ever denied such care or treatment or that the defendant interfered with the plaintiff's medical care or treatment.  Id.

In sum, there is no evidence from which a reasonable finder of fact could conclude that the defendant knew of and disregarded an excessive risk to the plaintiff's health.  Accordingly, the defendant is entitled to summary judgment on the plaintiff's Eighth Amendment claim.

## II.  Qualified Immunity

Government officials are subject to suit in their individual capacity for alleged violations of constitutional rights in the course of their federal employment, but they are afforded broad protection from liability under the qualified immunity doctrine. See Harlow v. Fitzgerald, 457 U.S. 800 (1982).  Qualified immunity shields government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Id. at 818; Lee v. Sandberg, 136 F. 3d 94 (2d Cir.

1997); <u>Glendora v. Pinkerton</u>, 25 F. Supp. 2d 447 (S.D.N.Y. 1998); <u>Doe v. Connecticut Department of Children and Youth Services</u>, 712 F. Supp. 277 (D. Ct. 1989)(Opinion per Dorsey, J). Because only suits for alleged violations of well-settled constitutional rights may properly proceed under the qualified immunity doctrine, the doctrine protects "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

The broad protection afforded by qualified immunity provides "an immunity from suit rather than a mere defense to liability." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985). Whether a defendant is entitled to qualified immunity is a question of law that the Court should determine at the earliest possible point in the case, so as to protect public officials from the threat of liability or harassing litigation that may inhibit the discharge of their official duties. <u>See</u> <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991); <u>Siegert v. Gilley</u>, 500 U.S. 226, 232-33 (1991).

In <u>Harlow</u>, the Supreme Court emphasized that significant "social costs" are inherent in subjecting federal officials to the litigation process, including "the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." <u>Harlow</u>, 457 U.S. at 814. To minimize those costs, the Court directed that "<u>discovery should not be allowed</u>" absent

allegations stating a violation of clearly established federal
constitutional or statutory rights. Id. at 818 (emphasis added).
The Court re-emphasized that point in Behrens v. Pelletier, 516
U.S. 299 (1996), explaining that qualified immunity "is meant to
give government officials a right, not merely to avoid 'standing
trial,' but also to avoid the burdens of 'such pretrial matters
as discovery.'" Id. at 308 (quoting Mitchell, 472 U.S. at 526).
In Crawford-El v. Britton, 523 U.S. 574, 598 (1998), the Supreme
Court once again emphasized that motions to dismiss raising
qualified immunity are to be decided "before permitting
discovery," thereby minimizing the burden on public official
defendants.

When ruling on the issue of qualified immunity, the court
must first consider as a threshold matter whether the government
official's conduct violated a constitutional right. See Saucier
v. Katz, 121 S. Ct. 2151, 2156 (2001). If no constitutional
right is violated, there is no need for any further inquiry
concerning qualified immunity. See id.

Because only suits for alleged violations of well-settled
constitutional rights may properly proceed under the qualified
immunity doctrine, the doctrine "gives ample room for mistaken
judgments" by protecting "all but the plainly incompetent or
those who knowingly violate the law." Mangieri v. Clinton, 29
F.3d 1012, 1017 (5th Cir. 1994) (quoting Hunter v. Bryant, 502

U.S. 224, 229 (1991)); <u>accord</u> <u>Malley v. Briggs</u>, 475 U.S. 335, 341
(1986). "Law enforcement officers are only human, and
inevitably, accidents and mistakes of judgment will happen, and
these mistakes alone do not open officers to personal liability."
<u>Wren v. Towe</u>, 130 F.3d 1154, 1159 (5th Cir. 1997), <u>cert. denied</u>,
119 S. Ct. 51 (1998); <u>accord</u> <u>Prichett v. Alford</u>, 973 F.2d 307,
313 (4th Cir. 1992) (indicating that qualified immunity affords
tolerance for "mistakes of judgment traceable to unsettled law,
or faulty information, or contextual exigencies . . . .").

Because there is no evidence that the defendant violated the
plaintiff's Eighth Amendment rights, the defendant is entitled to
qualified immunity. An Eighth Amendment claim includes both an
objective component (whether the deprivation of a basic human
need is sufficiently serious,) and subjective component (whether
the officials acted with a sufficiently culpable state of mind).
<u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).

The objective component is responsive to "contemporary
standards of decency." <u>Hudson v. McMillian</u>, 503 U.S.1, 8 (1992).
"When prison officials maliciously and sadistically use force to
cause harm, contemporary standards of decency always are
violated." <u>Id</u> at 9. The subjective component follows, as stated
above, from the principle that "only the unnecessary and wanton
infliction of pain implicates the Eighth Amendment." <u>Farmer v.</u>
<u>Brennan</u>, 511 U.S. 825, 834 (1994)(quoting <u>Wilson</u>, 501 U.S. at

297); <u>Rhodes v. Chapman</u>, 452 U.S. 337, 345 (1981).

Here, considered objectively, there is no evidence that the defendant's conduct was unlawful and thus it does not constitute conduct that violates the Eighth Amendment.  Specifically, a review of the evidence reveals that the defendant's conduct can reasonably be characterized as serving a legitimate government end; BOP procedures require that closed shoes be worn at all times in the food service department.  Def.'s Stat. at ¶¶ 6-7, 35.  Second, there were no medical restrictions preventing the plaintiff from working in the Food Services Department or from wearing closed-toe shoes.  <u>Id.</u> at ¶¶ 7-19.  Moreover, the defendant's conduct was not of a kind likely to cause substantial physical injury or emotional suffering and a need for medical treatment.  <u>Id.</u> at ¶¶ 32-34.  Indeed, there is no evidence that the plaintiff received inadequate medical care and treatment for her foot condition or that she was ever denied such care or treatment.  <u>Id.</u> at ¶¶ 37-38.  Nor is there any evidence that the defendant interfered with the plaintiff's medical care or treatment for her foot condition.  <u>Id.</u>  Notably, the plaintiff never asked the defendant to go to the HSU because of any problems she was having with her foot.  <u>Id.</u> at ¶ 30.  Accordingly, there is no evidence from which a reasonable trier of fact could conclude that an Eighth Amendment violation occurred and thus the defendant is entitled to qualified

- 16-

immunity.

Even assuming, however, that the plaintiff could establish
an Eighth Amendment violation, the defendant is still entitled to
qualified immunity because a reasonable cook supervisor in the
defendant's position would not have understood that he was
violating plaintiff's Eighth Amendment rights.  See Saucier, 533
U.S. at 200-202.  That is, although generally it is clearly
established that inmates have the right to be free from the
deliberate indifference to a serious medical need, in the context
of this case, a reasonable official like the defendant would have
believed that his conduct was lawful.  Specifically, it was
objectively reasonable for the defendant to believe that his
conduct in requiring the plaintiff to put on closed toe shoes was
not unlawful or in violation of the Eighth Amendment.  Moreover,
the defendant had a good faith belief that his actions were
lawful since BOP policy required the plaintiff to wear closed
shoes and because the plaintiff did not have any medical
restrictions preventing her from working in the Food Services
Department.  Consequently, it was objectively reasonable for the
defendant to believe that his actions did not violate the law.
Accordingly, the defendant is entitled to qualified immunity.

## III. **Defendant is Entitled to Summary Judgment on Plaintiff's FTCA Claim**

The plaintiff claims that the defendant was negligent when

he allegedly forced her foot into a shoe.  This claim is without merit.

It is well-settled that with respect to tort claims as to which the United States has waived its sovereign immunity, the FTCA requires the court to apply the substantive law of the place where the event occurred. Alexander v. U.S., 132 F. Supp.2d 332(E.D. Pa 2001); 28 U.S.C. § 1346 (b).  In Connecticut, negligence is proved by evidence of: 1) a duty or standard of care; 2) a breach thereof; 3) proximate causation; and 4) actual damages.  Stanley v. Meriden Housing Authority, et al., 2002 WL 31172927 (Conn. Super., Aug. 27, 2002)  In other words, Plaintiff must establish that there was a duty owed to her, that there was a breach of that duty, that the breach of duty was the proximate cause, or substantial factor in bringing about her harm, and that damages suffered by her were a direct result of the harm. Palkimas v. Lavine, 71 Conn. App. 537 (2002); Tonetti v. Barth, 2003 WL 231654 (Conn. Super., Jan. 7, 2003); LaFlamme v. Dallessio, 261 Conn. 247 (2002); Ryan v. Tursi, 2002 WL 31462968 (Conn. Super., Oct. 17, 2002).

In the present case, because there is no evidence to corroborate plaintiff's allegations that the defendant ever touched the plaintiff or that the defendant violated BOP procedures by requiring the plaintiff to wear closed toe shoes in the Food Services Department, the plaintiff's FTCA claim fails as

- 18-

a matter of law.  Id. at ¶¶ 28, 36.  Moreover, because the plaintiff did not have any restriction preventing her from working in the Food Services Department it was appropriate for the defendant to require the plaintiff to wear closed toe shoes. Id. at ¶¶ 16-17.  Finally, there is no evidence that the defendant caused the plaintiff any harm or that the plaintiff suffered any damages at all.  Id. at ¶¶ 32-34.  Accordingly, the plaintiff's FTCA claim fails as a matter of law.

## IV.    Conclusion

_____For all of the foregoing reasons, the defendants are entitled to summary judgment on the plaintiff's Bivens claim as well as her FTCA claim.

Respectfully submitted,
DEFENDANT
KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


DOUGLAS P. MORABITO
ASSISTANT U.S. ATTORNEY
157 CHURCH STREET
NEW HAVEN, CT
FEDERAL BAR NO. ct20962

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the within and foregoing was mailed, postage prepaid, via first-class mail this 6th day of October, 2004, to:

Betty Jean Murphy
Inmate # 15926057
Box A, Cottage 12
Federal Prison Camp
Alderson, WV 24910

DOUGLAS P. MORABITO
ASSISTANT UNITED STATES ATTORNEY

- 20-