UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BETTY JEAN MURPHY, | : | |
| Plaintiff, | : | CIVIL NO. 3:02CV2311(JBA) |
| v. | : | |
| HEATH | : | |
| Defendant. | : | OCTOBER 6, 2004 |

**LOCAL RULE 56(a)1 STATEMENT**[1]

1. The plaintiff, Betty Jean Murphy, is a federal inmate incarcerated at the Federal Prison Camp ("FPC") in Alderson, West Virginia since July 3, 2002.

2. Prior to arriving at FPC Alderson, the plaintiff was based at Federal Correctional Institution ("FCI") Danbury, Connecticut from January 29, 2000 to July 3, 2002.  See Exhibit A, Affidavit of George Vogliano, M.D.

3. The defendant, David Heath, began his employment with the Bureau of Prisons in 1989 as a Cook Supervisor at FCI Danbury, Connecticut.  He currently is a Food Services Warehouse Supervisor at FCI Danbury.  See Exhibit B, Affidavit of David Heath at ¶ 1.

---

[1] For purposes of the Local Rule 56(a)1 Statement and the motion for summary judgment, the defendant's submit the following statement of material facts not in dispute.  The defendant, however, reserves the right to dispute any and all of the following facts at trial.

4.   The Plaintiff alleges that on March 8, 2002 at FCI Danbury, the defendant Heath inappropriately forced her swollen foot into a sneaker despite the fact that she claimed to have had a medical slip indicating certain medical restrictions.  <u>See</u> Plaintiff's Complaint.

5.   On March 7, 2002 at approximately 7:30 A.M., the plaintiff reported for work to the Food Services Department wearing one slipper and one sneaker.  <u>See</u> Exhibit B, ¶ 3.

6.   Because Slippers are not permitted to be worn by inmates assigned to the Food Services Department. Defendant, who was on shift as Cook Supervisor, informed the plaintiff that she needed to go back to her room and get her steel toed shoes on because they are generally required in Food Services.  <u>See</u> Exhibit B, ¶ 4.

7.   An inmate on medical restriction is allowed to wear soft shoes in the Food Services Department as long as she is not working near the kitchen and is away from heavy equipment.  <u>See</u> Exhibit B, ¶ 6.

8.   Plaintiff responded that she had a soft shoe pass and that she had several other restrictions that prevented her from working in the Food Services Department.  <u>See</u> Exhibit B, ¶ 5.

9.   Defendant explained to Plaintiff that slippers are not allowed in the Food Services department and that she needed to wear some sort of shoe or sneaker on that foot.  <u>See</u> Exhibit B, ¶

2

7.

10.  Defendant further informed her that if she had documentation indicating that she was unable to work in Food Services, she needed to bring that paperwork to his attention.  See Exhibit B, ¶ 8.

11.  Plaintiff returned to Food Services thirty minutes later still wearing one slipper and one shoe.  She also had three folders with her, which were approximately four or five inches thick.  See Exhibit B, ¶ 9.

12.  Plaintiff stated that she had to look through those folders to find her medical restrictions and soft shoe pass.  See Exhibit B, ¶ 10.

13.  Defendant informed Plaintiff that it was her responsibility to have available any medical paperwork when she reported to work, and that she was not going to use work time to look up any paperwork.  See Exhibit B, ¶ 11.

14.  Defendant told Plaintiff to return her folders to her room and return to Food Services wearing either two shoes or two sneakers on her feet.  See Exhibit B, ¶ 12.

15.  When Plaintiff left to go to her room, Defendant called the institution hospital (Health Services Unit or "HSU") to get any medical history on Plaintiff which would prevent her from working in Food Services.  See Exhibit B, ¶ 13.

16.  Staff at the HSU reported that there was absolutely no

reason why Plaintiff could not work in the Food Services Department.  See Exhibit B, ¶ 14.

17.  Her medical history only indicated that she had a restriction from wearing steel toe shoes.  See Exhibit B, ¶ 15.

18.  The Laundry Department stated that Plaintiff had refused the soft shoes which had been provided to her.  See Exhibit B, ¶ 15.

19.  When Plaintiff returned to Food Services, Defendant told her that he had learned from medical staff Plaintiff's medical status, and that she needed to get a sneaker or soft shoe for her slipper clad right foot because there was no restriction limiting her from working at Food Services.  See Exhibit B, ¶ 16.

20.  Plaintiff left and came back with a sneaker and stated that she could not put it on her foot.  See Exhibit B, ¶ 17.

21.  Defendant noticed that Plaintiff had not even untied the shoe.  See Exhibit B, ¶ 18.

22.  Defendant watched Plaintiff untie the shoe and told her to pull the tongue out of the shoe, loosen the laces, and slide her foot in.  See Exhibit B, ¶ 19.

23.  Plaintiff continued to complain that she could not put the shoe on.  See Exhibit B, ¶ 20.

24.  Defendant knelt down and noticed that Plaintiff was rolling her toes under so that her foot would not fit in her sneaker.  See Exhibit B, ¶ 21.

25.  Defendant told Plaintiff to straighten out her toes and slide her foot into the sneaker.  See Exhibit B, ¶ 22.

26.  Plaintiff's foot slid right in the shoe but she complained that she could not tie her sneaker because her foot hurt.  See Exhibit B, ¶ 23.

27.  Defendant told her that she could leave her laces untied because her job was to sit by the serving line and hand out napkins.  See Exhibit B, ¶ 24.

28.  Defendant never touched plaintiff's sneaker, foot or any other part of her body.  See Exhibit B, ¶ 25.

29.  Defendant never threatened to write plaintiff up with an incident report because of her foot condition.  See Exhibit B, ¶ 28.

30.  Plaintiff never asked Defendant to go to the HSU because of any problems she was having with her foot.  See Exhibit B, ¶ 27.

31.  On March 11, 2002, Plaintiff went to sick call, complaining of pain in her right foot due to a bunion.  See Exhibit A, ¶ 2.c.

32.  The health services examination did not reveal any signs of infection and only noted redness in the area.  Plaintiff was provided oral medication for discomfort, was given convalescence for thirty days, and was authorized to wear slippers.  See Exhibit A, ¶ 2.c.

33.  Plaintiff reported to Health Services as follow-up about two

5

times after March 7, 2002, however no serious injuries were ever reported, nor was the determination ever made that her discomfort was caused by the incidents of March 7, 2002.  See Exhibit A, ¶ 2.c.

34.  Plaintiff has not complained of any psychological trauma from the alleged incident.  See Exhibit A.

35.  There is no evidence that the defendant Heath violated any BOP policy when he required the plaintiff to wear a closed shoe. See Exhibit B.

36.  There is no evidence that the defendant Heath forced the plaintiff's foot into a sneaker.  See Exhibit B.

37.  There is no evidence that the plaintiff received inadequate medical care or treatment for her foot condition or that she was ever denied such care or treatment.  See Exhibit B, ¶ 24; Exhibit C, Plaintiff's Deposition at page 30.

38.  There is no evidence that the defendant Heath interfered with the plaintiff's medical care or treatment for her foot condition.  See Exhibit B, ¶ 24; Exhibit C, Plaintiff's Deposition at page 31.

39.  The plaintiff's foot condition was properly characterized as a bunyion and it is not a condition which may produce death or degeneration.  See Exhibit A.

40.  The plaintiff's foot condition did not significantly affect her daily activities.  See Exhibit A.

41.  There is no evidence that the plaintiff suffered from chronic and substantial pain because of her foot condition.  See Exhibit A.

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the within and foregoing was mailed, postage prepaid, via first-class mail this 6th day of October, 2004, to:

Paula Louise Buford, Pro se
Inmate # 05422-089
FCI
Pembroke Station
Danbury, CT 06811

_____

                                          DOUGLAS P. MORABITO
                                          ASSISTANT UNITED STATES ATTORNEY